1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11

SOPHIA L.,[1]

Case No. 5:19-cv-01851-MAA

12

Plaintiff,

13

v.

**MEMORANDUM DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER**

14

15

ANDREW M. SAUL,
Commissioner of Social Security,

16

Defendant.

17

18

19

On September 26, 2019, Plaintiff filed a Complaint seeking review of the

20

Social Security Commissioner's final decision denying her application for

21

supplemental security income pursuant to Title XVI of the Social Security Act.

22

This matter is fully briefed and ready for decision.  For the reasons discussed

23

below, the Commissioner's final decision is affirmed, and this action is dismissed

24

with prejudice.

25

26

[1]  Plaintiff's name is partially redacted in accordance with Federal Rule of Civil
Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court

27

Administration and Case Management of the Judicial Conference of the United
States.

28

# ADMINISTRATIVE HISTORY

On July 28, 2015, Plaintiff protectively filed an application for supplemental security income, alleging disability beginning on February 10, 2015. (Administrative Record ("AR") 45, 82, 108.)  Plaintiff alleged disability due to asthma, bronchitis, stress, high blood pressure, hypertension, anemia, mood swings, screws on her right leg, depression, and insomnia.  (AR 83-84, 96.)  After her application was denied initially and in reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 45, 126-29.)  At a hearing held on July 17, 2018, at which Plaintiff appeared with counsel, the ALJ heard testimony from Plaintiff and a vocational expert.  (AR 61-81.)

In a decision issued on August 20, 2018, the ALJ denied Plaintiff's application after making the following findings pursuant to the Commissioner's five-step evaluation.  (AR 45-55.)  Plaintiff had not engaged in substantial gainful activity since her application date of July 28, 2015.  (AR 23.)  She had severe impairments consisting of "status post fractures of the right leg; obesity; depression; anxiety; and post-traumatic stress disorder."  (AR 47.)  She did not have an impairment or combination of impairments that met or medically equaled the requirements of one of the impairments from the Commissioner's Listing of Impairments.  (AR 47-48.)  She had a residual functional capacity for light work "except she [could] occasionally push/pull with the right lower extremity; [could] frequently climb ramps/stairs; [could] never climb ladders/ropes/scaffolds; [could] occasionally balance or stoop; [could] never kneel, crouch or crawl; and [could] perform simple repetitive tasks."  (AR 49.)  She had no past relevant work.  (AR 53.)  However, she could perform other work in the national economy, in the occupations of assembly line worker and stock clerk.  (AR 54.)  In sum, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (*Id.*)

///

Plaintiff requested review by the Appeals Council (AR 186, 191-92) and submitted new evidence as part of the request (AR 24-27).  On August 16, 2019, the Appeals Council denied Plaintiff's request for review.  (AR 1-6.)  Thus, the ALJ's decision became the final decision of the Commissioner.

## DISPUTED ISSUES

The parties raise the following disputed issues:

1.     Whether the ALJ properly evaluated Plaintiff's mental limitations due to agoraphobia and post-traumatic stress disorder ("PTSD"); and

2.     Whether the ALJ properly evaluated the opinion of Dr. Otuechere, Plaintiff's treating physician.

(ECF No. 25, Parties' Joint Stipulation ["Joint Stip."] at 4.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied.  *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035.  Where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld.  *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

**DISCUSSION**

**A.      Evaluation of Plaintiff's Mental Limitations (Issue One).**

In Issue One, Plaintiff claims that the ALJ did not properly evaluate Plaintiff's limitations due to agoraphobia and PTSD.  (Joint Stip. at 4-12, 18-19.)

**1.      Legal Standard.**

A claimant's residual functional capacity ("RFC") represents the most she can do despite her limitations.  20 C.F.R. § 416.945(a)(1); *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); *Smolen v. Chater*, 80 F.3d 1273, 1291 (1996).  An ALJ's RFC determination "must set out *all* the limitations and restrictions of the particular claimant."  *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original).  An ALJ will assess a claimant's residual functional capacity "based on all of the relevant medical and other evidence."  20 C.F.R. § 416.945(a)(3); *see also* Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, at *5 ("The RFC assessment must be based on *all* of the relevant evidence in the case record[.]") (emphasis in original).

**2.      Background.**

In February 2015, Plaintiff broke her right leg when she, as a pedestrian, was struck by a car.  (AR 666.)  She had an intramedullary rod placed in the tibia and was later discharged to a rehabilitation facility.  (*Id*.)  At the facility, Plaintiff's wound became infected.  (*Id*.)  She received intravenous antibiotics.  (AR 635.)  In April 2015, Dr. Luna, an orthopedic surgeon, performed an incision and drainage of Plaintiff's right leg wound and removal of the tibial plate.  (AR 346, 635.)  In August 2015, an x-ray of Plaintiff's right tibia and fibula showed the fractures had healed.  (AR 342.)  Similarly, in March 2016, an x-ray of Plaintiff's right tibia and fibula showed that the fractures were healed.  (AR 519.)  In his decision, the ALJ ///

1    found that the medical evidence showed that "the fracture was healed within a
2    period of less than 12 months."  (AR 52.)

3        In August 2015, Dr. Luna completed a "Medical Opinion Ability To Do
4    Work Related Activities (Mental)."  (AR 340-41.)  In relevant part, Dr. Luna stated
5    that Plaintiff would be "unable to meet competitive standards" in most areas of
6    mental functioning in the workplace, such as remembering, understanding, and
7    maintaining attention.  (*Id*.)

8        The ALJ gave "little weight" to Dr. Luna's opinion.  (AR 52.)  Among the
9    reasons the ALJ cited for doing so was that Dr. Luna was an orthopedic surgeon
10   who had treated Plaintiff for her right leg fracture, that Dr. Luna was not
11   specialized in the field of psychiatry or psychology, and that Dr. Luna's treatment
12   notes generally made no mention of Plaintiff's mental status other than finding her
13   alert and oriented.  (*Id*.)

14       Instead, the ALJ gave "partial weight" to the opinion of Dr. Belen, a
15   psychiatrist who examined Plaintiff in February 2016.  (AR 52; *see also* AR 493-
16   97.)  Upon examination, Dr. Belen diagnosed a mood disorder due to medical
17   problems (AR 495) but ultimately concluded that Plaintiff's difficulties in mental
18   functioning were "mild" (AR 496).

19       The ALJ also discussed records showing that in 2017 to 2018, Plaintiff
20   received mental health treatment at CHARLEE Family Care.  (AR 51; *see also* AR
21   59-608.)  According to those treatment records, Plaintiff was diagnosed with
22   agoraphobia with panic disorder; major depressive disorder, recurrent severe
23   without psychotic features; and post-traumatic stress disorder, acute.  (AR 606.)
24   But the ALJ noted, in pertinent part, that these records showed Plaintiff "had
25   remained generally stable with treatment." (AR 51.)

26       In the mental component of his RFC assessment, the ALJ imposed a
27   limitation that was more restrictive than Dr. Belen's opinion but less restrictive than
28   ///

Dr. Luna's opinion.  Specifically, the ALJ assigned Plaintiff an RFC limiting her to the performance of "simple repetitive tasks."  (AR 49.)

### 3.    Analysis.

Plaintiff contends that the sole mental limitation that the ALJ found, for simple and repetitive tasks, was erroneous for multiple reasons.

### a.    assessment of RFC without a medical expert.

Plaintiff contends that the ALJ improperly acted as a medical expert in assessing Plaintiff's mental limitations.  (Joint Stip. at 10.)  As the Commissioner points out (*id*. at 16), however, the question of a claimant's RFC is an issue reserved to the ALJ, not to a physician.  *See* 20 C.F.R. § 416.927(d)(2) (2012) (an ALJ has the final responsibility for deciding issues such as residual functional capacity); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."); *Lynch Guzman v. Astrue*, 365 F. App'x 869, 870 (9th Cir. 2010) ("Residual functional capacity is an administrative finding reserved to the Commissioner."); *see also Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record, "[w]e . . . reject claimant's implicit argument that there must be specific, affirmative medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category").

In assessing a claimant's RFC, an ALJ must consider "*all* of the relevant evidence in the case record."  *See* SSR 96-8P, 1996 WL 374184, at *5 (emphasis in original).  This evidence is not confined to the statements of physicians, but may also include various types of non-medical evidence such as reports of daily activities, lay evidence, and evidence of work history.  *See id.*; *see also* 20 C.F.R.

1    § 416.945(a)(3) ("We will assess your residual functional capacity based on all of

2    the relevant medical and *other evidence*.") (emphasis added).  The responsibility for

3    considering all of that evidence for the purpose of assessing a claimant's RFC falls

4    to the ALJ, rather than to physicians who, in almost all cases including this one, do

5    not consider all of the relevant evidence in the case record, particularly non-medical

6    evidence.

7

8                    **b.    failure to account for agoraphobia and PTSD.**

9            Plaintiff further contends that the ALJ's limitation of Plaintiff to simple and

10   repetitive tasks was insufficient to account for Plaintiff's non-cognitive limitations

11   caused by her agoraphobia and PTSD.  (Joint Stip. at 10.)   The record, however,

12   contains no indication that Plaintiff attempted to submit any evidence that she

13   suffered from any non-cognitive limitations that would be attributable to her

14   agoraphobia and PTSD.  Ultimately, it was Plaintiff's responsibility to present such

15   evidence, but Plaintiff did not do so.  *See* 20 C.F.R. § 416.945(a)(3) ("In general,

16   you are responsible for providing the evidence we will use to make a finding about

17   your residual functional capacity."); *Widmark v. Barnhart*, 454 F.3d 1063, 1068

18   (9th Cir. 2006) ("Of course, [the claimant] is ultimately responsible for providing

19   the evidence to be used in making the RFC finding.").

20

21                    **c.    failure to develop the record.**

22           Finally, Plaintiff contends that the ALJ should have developed the record as

23   to her mental limitations because the existing record was inadequate.  (Joint Stip. at

24   11-12.)  For example, Plaintiff contends that the ALJ should have sought

25   clarification from Plaintiff's doctors, ordered another consultative examination,

26   called a medical expert at the hearing, continued the hearing, or kept the record

27   open for additional evidence.  (*Id*. at 11.)

28   ///

                                            7

1    Although the claimant is ultimately responsible for providing the evidence to
2    be used in making the RFC finding, an ALJ still has "a special duty to fully and
3    fairly develop the record and to assure that the claimant's interests are considered."
4    *Widmark*, 454 F.3d at 1069; *see also* SSR 96-8P, 1996 WL 374184, at *5 (an ALJ
5    must "make every reasonable effort to ensure that the file contains sufficient
6    evidence to assess RFC").  Even if an ALJ does not make a specific finding that the
7    existing record is ambiguous or inadequate, the duty is triggered "where the record
8    establishes ambiguity or inadequacy."  *See McLeod v. Astrue*, 640 F.3d 881, 885
9    (9th Cir. 2011).

10    As an initial matter, the Commissioner contends that Plaintiff forfeited her
11    argument that the ALJ committed legal error in failing to develop the record by
12    failing to raise the argument before the agency.  (Joint Stip. at 18.)  The error that
13    Plaintiff argues here—the ALJ's failure to develop the record—is an error that
14    would have been apparent to Plaintiff and her counsel by the time of the
15    administrative hearing.  Thus, by failing to raise the argument before the agency
16    when the error was apparent to her, Plaintiff appears to have forfeited the argument.
17    *See Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (holding that an
18    argument involving an ALJ's alleged error in calculating job numbers was forfeited
19    because it was not raised before the agency).  Moreover, Plaintiff does not
20    challenge the Commissioner's position that this argument is forfeited.  (Joint Stip.
21    at 18-19.)

22    In any event, even assuming that Plaintiff did not forfeit the argument,
23    Plaintiff has not shown that the ALJ committed legal error.  The record that was
24    before the ALJ did not show an ambiguity or inadequacy that required further
25    development of the record.  Contrary to Plaintiff's assertion that the ALJ "did
26    nothing" (Joint Stip. at 12), the ALJ did develop the record regarding Plaintiff's
27    mental limitations by ordering a consultative examination that was performed in
28    February 2016 by Dr. Belen, a psychiatrist (AR 493-97).  Although the ALJ did not

1    hold the hearing until almost two and a half years later, in July 2018 (AR 61-81),

2    Plaintiff has not shown that the record for the period between February 2016 to July

3    2018 was ambiguous or inadequate.  Critically, Plaintiff has not shown that her

4    mental condition changed or deteriorated appreciably after the consultative

5    examination in February 2016.

6           To be sure, during the period from February 2016 to July 2018, additional

7    mental health evidence was generated.  As noted, from July 2017 to May 2018,

8    Plaintiff underwent mental health treatment at CHARLEE Family Care.  (AR 590-

9    608.)  There, Plaintiff was diagnosed with agoraphobia, major depressive disorder,

10    and PTSD; and she was prescribed lorazepam, prazosin, Zoloft, and trazodone.

11    (AR 606.)  But this more recent evidence did not raise an ambiguity or inadequacy

12    that triggered the ALJ's duty to inquire further.  Rather, the ALJ assessed this more

13    recent evidence (AR 51) but reasonably declined to add any mental limitation other

14    than a limitation to simple, repetitive tasks (AR 49).  According to the ALJ's

15    assessment, the CHARLEE Family Care records showed that, although Plaintiff's

16    mental symptoms showed "some waxing and waning" depending on social

17    stressors, Plaintiff nonetheless remained "generally stable with treatment[.]"  (AR

18    51.)  The ALJ also noted in his assessment that the findings from mental status

19    examinations at CHARLEE Family Care showed "normal speech, intact and age

20    appropriate cognitive functioning, intact short and long-term memory, no signs of

21    hyperactive or attentional difficulties, and no indicators of abnormalities in thought

22    or perception."  (*Id*. (citing AR 590, 592-93, 595, 597, 599, 601, 603, 606-08).)

23    This was a fair assessment of that evidence.

24           The ALJ was qualified to make this assessment without having a duty to

25    develop the record more than he already did.  *See Wellington v. Berryhill*, 878 F.3d

26    867, 875-76 (9th Cir. 2017) (ALJ was equipped to assess mental health records for

27    a 17-month period, which showed claimant's stability with treatment, without

28    having to call a medical expert to review those records for a disability onset date).

As noted, the ALJ did not fail to develop the record altogether, but did develop it by ordering the consultative psychiatric examination performed by Dr. Belen.  (AR 493-97.)  The CHARLEE Family Care records did not demonstrate a notable change or deterioration in Plaintiff's mental condition after that consultative examination, such that further inquiry was required.  Indeed, the generally unremarkable findings from the mental status examinations at CHARLEE Family Care, as the ALJ described them (AR 51), were not significantly different from the earlier unremarkable findings of Dr. Belen (AR 495).

The most notable new information revealed by the CHARLEE Family Care records was that Plaintiff was diagnosed, for the first time, with agoraphobia and PTSD.  (AR 606.)  However, these new diagnoses by themselves, without evidence of significant accompanying symptoms, were insufficient to trigger the ALJ's duty to develop the record more than he did.  *See Morsea v. Berryhill*, 725 F. App'x 463, 465 (9th Cir. 2018) (claimant's cancer diagnosis by itself did not require the ALJ to develop the record by obtaining the testimony of a medical expert) (citing *Waters v. Gardner*, 452 F.2d 855, 857 (9th Cir. 1971) ("The fact that a person is suffering from a diagnosed disease or ailment is not sufficient in the absence of proof of its disabling severity to warrant the award of benefits.") (citation omitted)).  In sum, the ALJ did not commit legal error by failing to develop the record.

### 4.    Conclusion.

For these reasons, Plaintiff has not shown that the ALJ erred in assessing the mental component of Plaintiff's residual functional capacity.  Thus, reversal is not warranted for Issue One.

///

///

///

///

**B.      Dr. Otuechere's Opinion (Issue Two).**

In Issue Two, Plaintiff claims that the ALJ did not properly evaluate the opinion of Dr. Otuechere, Plaintiff's treating physician, about Plaintiff's physical limitations.  (Joint Stip. at 4, 19-25, 30-31.)

**1.      Legal Standard.**

Because the ALJ did not have an opportunity to evaluate Dr. Otuechere's opinion, the ALJ could not have committed the legal error in this regard.  Rather, Dr. Otuechere's opinion was presented for the first time to the Appeals Council (AR 24-27), which subsequently denied Plaintiff's request for review (AR 1-6).

A decision by the Appeals Council denying review of an ALJ's decision, including any reasoning for denying review, is not subject to subsequent judicial review.  *See Luther v. Berryhill*, 891 F.3d 872, 876 (9th Cir. 2018).  However, "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."  *Brewes v. Commissioner of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999)).  The Court then "must give the facts a full review and must independently determine whether the Commissioner's findings are supported by substantial evidence."  *See Smolen*, 80 F.3d at 1279 (citing *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)).

**2.      Background.**

Dr. Otuechere's opinion consisted of a "Physical Medical Source Statement," completed in February 2019, in which she stated the following:

///

///

11

1    Plaintiff has diabetes mellitus type two, hypertension, chronic obstructive

2    pulmonary disease, and anxiety.  (AR 25.)  Her symptoms include weakness,

3    abdominal discomfort, and headaches.  (*Id*.)

4    Plaintiff can sit, stand, or walk for ten minutes at a time and for less than two

5    hours total in an eight-hour workday.  (*Id*.)  She is "unable to work at this time."

6    (AR 26.)  She must use a cane or other assistive device to stand or walk.  (*Id*.)  She

7    can lift and carry less than ten pounds rarely and ten pounds occasionally.  (*Id*.)

8    Plaintiff has significant limitations in reaching, handling, or fingering.  (AR

9    27.)  During an eight-hour workday, she can use her hands, fingers, and arms for

10   ten percent on the right side and five percent on the left side.  (*Id*.)  More generally,

11   Plaintiff is limited functionally because of low back pain, left leg pain, arthritis, and

12   hardware inserted in her right ankle and leg.  (*Id*.)

13

14        **3.    Analysis.**

15        Dr. Otuechere's opinion did not render the ALJ's decision unsupported by

16   substantial evidence.  In the first place, Dr. Otuechere's opinion does not relate to

17   the relevant time period.  Dr. Otuechere issued the opinion in February 2019 (AR

18   27), six months after the ALJ's decision in August 2018 (AR 55).  Dr. Otuechere

19   did not suggest that her February 2019 opinion was retroactive to August 2018, but

20   instead stated that Plaintiff was unable to work "at this time."  (AR 26.)  Given the

21   time period that Dr. Otuechere's opinion appeared to have contemplated, this is

22   reason enough to find that the ALJ's earlier decision is not undermined.  *See*

23   *Petersen v. Berryhill*, 737 F. App'x 329, 332 (9th Cir. 2018) ("The new medical

24   evidence [the claimant] submitted to the Appeals Council does not affect the ALJ's

25   disability determination and does not warrant remand because the new evidence

26   post-dates the period under review, is not retroactive to that period, and therefore

27   would not reasonably affect the ALJ's decision.") (citing *Brewes*, 682 F.3d at 1162

28   ("The Commissioner's regulations permit claimants to submit new and material

evidence to the Appeals Council and require the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relates to the period on or before the ALJ's decision.")).

In any event, even assuming that Dr. Otuechere's opinion should be interpreted as retroactive to the relevant period under review, it still would not have rendered the ALJ's decision unsupported by substantial evidence.  Dr. Otuechere's opinion about Plaintiff's physical limitations was inconsistent with Dr. Otuechere's own findings.  *See Wilder v. Commissioner of Social Sec. Admin.*, 545 F. App'x 638, 640 (9th Cir. 2013) (holding that a physician's opinion presented for the first time to the Appeals Council did not merit remand because test results that the physician had administered belied that opinion); *Newcomer v. Berryhill*, 716 F. App'x 652, 653 (9th Cir. 2018) (same because there was no legitimate basis for a limitation the physician ascribed to the claimant).  For example, Dr. Otuechere's statement that Plaintiff would have significant limitations with reaching, handling, or fingering (AR 27) had no legitimate basis in the record, which contains no evidence of hand problems.  Moreover, Dr. Otuechere's statement that Plaintiff must use a cane or other assistive device to stand or walk (AR 26) was belied by Dr. Otuechere's own findings that Plaintiff was "alert, active, [and] ambulatory" (AR 455, 457, 521, 533, 536, 538-39, 541-42, 545, 547, 549), had no challenges with independent mobility (AR 582), did not use a mobility device (*id*.), and could independently travel for three-fourths of a mile (*id*.).

In addition to suggesting these internal inconsistencies, Dr. Otuechere's opinion was inconsistent with the findings of other physicians.  *See Boyd v. Colvin*, 524 F. App'x 334, 336 (9th Cir. 2013) (holding that a physician's opinion presented for the first time to the Appeals Council did not merit remand because it was at odds with extensive evidence that was before the ALJ, including the findings of other physicians).  Dr. Otuechere's opinion was inconsistent with those of two state agency physicians who found that Plaintiff could perform a range of light work

with limited pushing and/or pulling with the right leg. (AR 91-92, 103-04.) The state agency physicians' opinions were consistent with other evidence in the record such as x-rays showing Plaintiff's fractures had healed (AR 100), as well as Dr. Otuechere's own observations that Plaintiff was an "alert active ambulatory middle aged lady" (AR 104). For this additional reason, Dr. Otuechere's opinion did not render the ALJ's decision unsupported by substantial evidence.

Plaintiff finally contends that certain words that Dr. Otuechere used in her notes, such as "active," were ambiguous and required the ALJ to develop the record by, for example, seeking clarification or taking other measures such as ordering a consultative examination to assess Plaintiff's physical limitations. (Joint Stip. at 22-23, 30-31.) To the contrary, Dr. Otuechere's words on the whole were sufficiently clear, so the ALJ had no duty to develop the record in this regard. Dr. Otuechere's findings that Plaintiff was ambulatory (AR 104) and had independent mobility without the use of an assistive device (AR 582) required no further explanation to be considered consistent with the state agency physicians' opinions that Plaintiff could perform a range of light work, but with limited use of the right leg (AR 91-92, 103-04). Thus, the words from Dr. Otuechere's treatment notes did not require clarification. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (ALJ did not have a duty to develop the record to determine what a physician meant by the words "fair" and "limited").

Moreover, the ALJ did not err in not obtaining a consultative examination to assess Plaintiff's physical limitations in the circumstances here. The record suggests, but does not clearly show, that such an examination was scheduled, but Plaintiff complained she would not have a ride. (AR 493.) The examination, if it was actually ordered, was never conducted. Contrary to Plaintiff's contention (Joint Stip. at 23, 31), the Commissioner was not required to reschedule it, assuming it was ever ordered in the first instance. Rather, a claimant may be denied benefits simply for failing to attend a consultative examination without a good

reason, and a transportation problem does not appear to be a good reason.  *See* 20 C.F.R. § 416.918(b).  But regardless of whether a consultative physical examination was ever ordered here, the ALJ did not err in ultimately deciding the case without one.  The existing evidence showed that Plaintiff's "fracture was healed within a period of less than 12 months" (AR 52), yet the ALJ nonetheless limited Plaintiff to a range of light work with limitations in the use of her right leg (AR 49).  The ALJ's resolution of the case in this manner was not erroneous.  *See Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (the Commissioner has broad latitude in ordering consultative examinations).

In sum, the evidence presented for the first time to the Appeals Council did not render the ALJ's decision unsupported by substantial evidence.  Moreover, the existing record of Plaintiff's physical impairments did not trigger a duty to develop the record.  Thus, reversal is not warranted for Issue Two.

## ORDER

It is ordered that Judgment be entered affirming the decision of the Commissioner of Social Security and dismissing this action with prejudice.

DATED:  December 11, 2020

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE